```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

THE ESTATE OF LOUISE LONGUS,    :
Perlia D. Smith, Personal
Representative                  :

     v.                         :   Civil Action No. DKC 22-682

                                :
2101 FAIRLAND ROAD OPERATIONS,
LLC d/b/a Fairland Center       :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this medical malpractice negligence case brought by Perlia D. Smith as personal representative of the Estate of Louise Longus ("Plaintiff") against 2101 Fairland Road Operations, LLC d/b/a Fairland Center ("Defendant") is the motion for summary judgment filed by Defendant. (ECF No. 48). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

I. **Background**[1]

Plaintiff is the daughter of Louise Longus ("Decedent"). (ECF No. 48-1, at 1). Decedent underwent a below the knee amputation at a hospital in Washington, D.C. (ECF No. 48-1, at 2). On January 7 or 8, 2017, Decedent was transferred to Fairland Center (the

---

[1] The following facts are either undisputed or construed in favor of Plaintiff.

"Facility") for rehabilitation. (ECF Nos. 13 ¶¶ 11, 15; 48-1, at 2).[2] While Decedent was at the Facility, Decedent told Plaintiff that she had been dropped. (ECF Nos. 48-1, at 2; 51, at 3). Plaintiff contends that "[w]hile the place of the drop was not made clear, the issue is what happened after the drop was communicated to the nursing facility." (ECF No. 51, at 4). Plaintiff contends that [n]o scans or x-rays were performed between January 8[th] and [January] 10[th]" at the Facility. (ECF No. 51, at 4). On January 10, 2017, Decedent was found unresponsive at the Facility, and Decedent was transferred to Howard County Hospital. (ECF No. 48-1, at 2). Decedent passed away at Howard County Hospital on January 11, 2017. (ECF Nos. 13 ¶ 7; 48-1, at 2).

On March 21, 2022, Plaintiff filed a complaint against Fairland Road Operations, alleging medical malpractice negligence and wrongful death. (ECF No. 1). On March 16, 2023, Plaintiff filed an amended complaint, naming the correct Defendant, and asserting diversity jurisdiction. (ECF No. 13). On September 30, 2024, Defendant filed a motion for summary judgment. (ECF No.

---

[2] Although Plaintiff alleged in her amended complaint that Decedent was a patient of the Facility "for the purpose of receiving convalescent and rehabilitation care and treatment," (ECF No. 13 ¶ 11), in her opposition to Defendant's motion for summary judgment, Plaintiff contends that Decedent's transfer to the Facility "was unplanned and was not known to [Plaintiff] or [to Decedent's] other adult children." (ECF No. 51, at 3).

48). On October 22, 2024, Plaintiff filed a response in opposition to Defendant's motion for summary judgment. (ECF No. 51). On September 5, 2024, Defendant filed a reply in support of its motion for summary judgment. (ECF No. 52).

**II. Standard of Review**

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

**III. Analysis**

**A. Choice of Law**

Defendant asserts that Maryland law applies, and Plaintiff does not dispute this. (ECF No. 48-1, at 9). "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the

3

choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 696 (D.Md. 2011) (citations omitted). Maryland is the forum state. Maryland follows the *lex loci delicti* rule in tort cases. *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F.Supp.2d 604, 606 (D.Md. 2008) (citations omitted). "Under *lex loci delicti*, the law of the state where the tort or wrong was committed applies." *Id.* (citing *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 911 A.2d 841, 844 (2006). Plaintiff has alleged that Decedent was harmed by Defendant in Maryland; therefore, Maryland law applies.

**B. Plaintiff's Claims**

Plaintiff's amended complaint asserts both a medical malpractice negligence claim and a wrongful death claim against Defendant. It is not clear precisely what is intended by count two, labeled a wrongful death claim. As pointed out by Defendant, such a claim is not brought by the personal representative but must be brought by all of the wrongful death beneficiaries. Plaintiff lists persons in her amended complaint as the children of Decedent but they have not formally joined as plaintiffs.

This court previously stated:

> The Maryland Wrongful Death Act requires all beneficiaries to bring their claims in a unitary action. *See* Md.Code Ann., Cts. & Jud.Proc. § 3-904(f). As Judge Motz previously explained:
>> Maryland's wrongful death statute explicitly permits only one wrongful death lawsuit to be brought by the beneficiaries of a decedent. In

4

> that single action, the beneficiaries of the decedent—including the decedent's spouse, parents, and children, who are considered "primary beneficiaries"—share any damages that are awarded in proportion to the injuries they suffered as a result of the decedent's death. Maryland law thus makes clear that all beneficiaries in wrongful death lawsuits are the real parties in interest in these suits. Indeed, if one of a decedent's beneficiaries is absent from a wrongful death lawsuit, Maryland law requires that a judgment rendered in favor of the beneficiary or beneficiaries who did prosecute the suit be vacated.
> *Johnson v. Price*, 191 F.Supp.2d 626, 629 (D.Md. 2001) (citations omitted). . . .
> The proper beneficiaries are defined by statute. The Maryland Wrongful Death Act states that, with certain exceptions not relevant here, a wrongful death action "shall be for the benefit of the wife, husband, parent, and child of the deceased person." Md.Code Ann., Cts. & Jud.Proc. § 3-904(a)(1).

*Chang-Williams v. Dep't of the Navy*, 766 F.Supp.2d 604, 629 (D.Md. 2011).  Although Plaintiff alleges that all of Decedent's children are "properly named" in Decedent's estate, Plaintiff has not joined Decedent's other children as required under Maryland's wrongful death statute.

Defendant posits that count II should be construed as a survival action.  This court has previously stated:

> [T]here is no separate cause of action known as a "survival claim." Rather, a survival action is brought by the personal representative asserting a claim that could have been brought by the decedent, had he survived. . . .
>
> The wrongful death claim . . . , however, is a separate cause of action, but it cannot be maintained if . . . negligence cannot be shown. A wrongful death action is brought by the relatives of the decedent, seeking

5

recovery for their loss as a result of the victim's death.

*Gardner v. Greg's Marine Const., Inc.*, No. 13-CV-1768-DKC, 2014 WL 198215, at *9 (D.Md. Jan. 14, 2014).

Thus, all claims against Defendant, whether brought by the Estate or the children, stem from Defendant's alleged medical malpractice negligence and can be analyzed together.

Plaintiff alleged that Defendant "breached the applicable standard of medical care owed to [Decedent]" causing injury to Decedent. (ECF No. 13 ¶ 25). In her amended complaint, Plaintiff seemed to allege that Defendant was negligent both in dropping Decedent and failing to provide adequate follow-up care to Decedent. (ECF No. 13). Plaintiff, however, in her opposition to Defendant's motion for summary judgment, seems to concede that her claim is not premised on Decedent being dropped. Plaintiff writes that "[w]hile the place of the drop was not made clear, the issue is what happened after the drop was communicated to the nursing facility." (ECF No. 51, at 4). Defendant argues that Plaintiff has not provided expert testimony necessary for a prima facie case of medical malpractice negligence; therefore, Defendant is entitled to summary judgment. (ECF No. 48-1, at 11-14).

Plaintiff attached Decedent's autopsy diagnosis and final conference note to her response in opposition to Defendant's motion for summary judgment. (ECF No. 51-3). The autopsy found, among

6

other findings, "an acute subdural hemorrhage . . . in the right cerebral hemisphere." (ECF No. 51-3, at 1). The autopsy concluded that "[t]hese findings, along with the patient's clinical history, are most consistent with subdural hemorrhage for cause of death." (ECF No. 51-3, at 1). She also relies on an expert opinion by Aunali S. Khaku, M.D., a neurologist. (ECF Nos. 1-3; 48-6). Plaintiff's expert discussed the autopsy report which showed a subdural hemorrhage, as well as a "[c]hest x-ray [which] reportedly showed a right humeral fracture and possible scapular fracture." (ECF No. 48-6, at 5). Plaintiff's expert opined that:

> Based on review of the provided medical records and [Plaintiff's] narrative provided above, it is my clinical opinion that this was a traumatic subdural hemorrhage likely from the reported fall. The most telling feature is that the patient also suffered scapular fracture. Scapular fractures are exceedingly rare and do not occur spontaneously. They only occur after major trauma. Traumatic subdural hematomas are often caused in the elderly by falls. Due to the coexistence of a scapular fracture, humerus fracture and massive intracranial and subdural bleed, it is my clinical opinion that the most proximate cause of this patient's demise was the major trauma caused during her fall which led to multiple fractures and bleed[ing].

(ECF No. 48-6, at 6).

> "In Maryland, a 'prima facie case of medical malpractice must consist of evidence which (1) establishes the applicable standard of care, (2) demonstrates that this standard has been violated, and (3) develops a causal relationship between the violation and the harm complained of.'" *Green v. Obsu*, No. 19-CV-2068-ELH, 2022 WL 2971950, at *19 (D.Md. July 27, 2022)(quoting *Weimer v. Hetrick*, 309 Md. 536, 553 (1987)). "Expert witnesses play a pivotal role in medical malpractice actions." *Rodriguez [v. Clark]*, 400 Md. [39,] [] 71, 926

>   A.2d [736,] [] 755 [2007]. In a case alleging negligence by a professional, expert testimony is ordinarily required to establish the standard of care, breach of the standard of care, and causation. *Jones v. State of Maryland*, 425 Md. 1, 26, 38 A.3d 333, 347 (2012) (citations omitted). The Maryland Court of Appeals [Supreme Court] has said: "The rule . . . is that experts are usually necessary to explain professional standards because such standards require specialized knowledge within the professional's field that are generally 'beyond the ken of the average layman[.]'" *Id.*, 38 A.2d at 347-48 (citations omitted)[.]

*Green*, 2022 WL 2971950, at *20.

Tragically, Decedent passed away under circumstances that are unfortunately left too unclear in the record to permit her estate or heirs to proceed. Although Plaintiff identifies an expert, Plaintiff's expert merely testifies as to the ultimate cause of Decedent's death. (ECF No. 48-6, at 6). Plaintiff's expert fails to establish the standard of care for nursing home facilities. Moreover, Plaintiff's expert fails to identify how Defendant breached that standard of care. As discussed above, Plaintiff has already conceded that there is no evidence that Defendant was responsible for dropping Decedent. (ECF No. 51, at 4). To survive a motion for summary judgment for Plaintiff's claim that Defendant negligently failed to provide proper care after being informed that Decedent fell, Plaintiff would need expert evidence that established that the standard of care for the facility was breached because Defendant failed to address Decedent's fall, that the breach contributed to Decedent's injury, and ultimately caused her

death.  Plaintiff would also need expert testimony that had Defendant responded properly, Defendant would have been able to treat Decedent in a way that would have impacted her prognosis. Plaintiff's expert does not provide this testimony.

Plaintiff has not provided any evidence that Defendant was negligent in caring for Decedent.  Therefore, there is no genuine dispute of material fact, and Defendant's motion for summary judgment will be granted as to Plaintiff's medical malpractice negligence claims.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted.  A separate order will follow.

                                             /s/
                                   DEBORAH K. CHASANOW
                                   United States District Judge